IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EDWINA L. CRAIG, personal representative of the estate of JAMES CRAIG,<br><br>        Plaintiff,<br><br>vs.<br><br>AARON KING, in his individual capacity;<br>REX BROWN, in his individual capacity;<br>CHRIS MASON, in his individual capacity;<br>RYAN CARTER, in his individual capacity,<br><br>        Defendants. | Case No. CIV-09-53-C |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Craig[1] asserts that Defendants Aaron King, Rex Brown, Chris Mason, and Ryan Carter violated his constitutional rights under the Fourth and Fourteenth Amendments by use of excessive force while detaining Plaintiff and failure to provide adequate medical care.[2] Defendants filed the present Motion for Summary Judgment asserting qualified immunity protects them from liability.

### I. BACKGROUND

On March 13, 2007, Plaintiff James Craig was arrested for animal cruelty by Hobart City police officers Aaron King, Rex Brown, Chris Mason, and Ryan Carter for shooting a

---

[1] Plaintiff James Craig died during the pendency of this action and his mother, Edwina Craig, has since been substituted as the plaintiff. Despite this substitution, the Court will continue to refer to James Craig as the plaintiff in this action.

[2] Plaintiff also asserted several state law claims and an additional Fourth Amendment search and seizure claim which were dismissed by the Court in a previous Order (Dkt. No. 26).

dog that came onto Plaintiff's mother's property. (Defs.' Br., Dkt. No. 55, at 2-3; Pl.'s Compl., Dkt. No. 1 Ex. 1, at 1.) Plaintiff admits to shooting the dog, but claims that he did so in self defense and legally pursuant to a city ordinance. (Pl.'s Br., Dkt. No. 64, at 3.) Misty Parker, the dog's owner, called Defendant King, her brother, after learning that Plaintiff shot her dog. (Defs.' Br., Dkt. No. 55, at 2.) Defendant King called the police and thereafter participated in the arrest of Plaintiff. (Id.) After the police arrived, Defendants King, Mason, and Carter approached Plaintiff's door and knocked.

Plaintiff answered the door with a phone in his hand, which one of the officers believed was a weapon. (Id. at 3.) The officers, who were in plain clothes, ordered Plaintiff to come outside and drop what was in his hands, drew their own weapons, and proceeded to arrest Plaintiff. (Id.) Plaintiff claims that the officers did not identify themselves and that during this time, the officers pressed their guns against his head and chest threatening to "splatter his brains" and "light him up" with a taser. (Pl.'s Br., Dkt. No. 64, at 8, 11.) The officers admit to threatening force to get Plaintiff out of his home. (Id. at 10.) The officers used two sets of handcuffs to detain Plaintiff, who stood over six feet tall and weighed over three-hundred pounds at the time of his arrest. (Defs.' Br., Dkt. No. 55, at 9.) Plaintiff additionally claims that while being placed in the patrol car, the officers repeatedly slammed the car door against him, kicked him, and hit him. (Id. Ex. 1, at 65-66.) Plaintiff claims that this beating resulted in bruising over his entire body, including the side of his head, but that these marks were only visible days later, after his release from jail. (Id. at 66-67.) Plaintiff alleges that the beating caused him temporary loss in the functioning of his arms and legs.

2

Plaintiff also asserts that while he was seated in the patrol car, he lost feeling in his arms and legs because the handcuffs pushed against a spot on his back where he had previously sustained a spinal cord injury. (Id. at 77, 86.) While being transferred to another patrol car, Plaintiff claims that he told Defendant Brown he had a spinal injury and needed an ambulance. (Id. at 88.) Plaintiff further alleges that he was unable to walk to the patrol car and that officers pulled him from the car and carried him. (Id. at 89, 93.) At this point, the officers removed Plaintiff's handcuffs from behind his back and repositioned his handcuffs to the front. (Id. at 90.)

Plaintiff claims that he was unable to move during the booking process but that he later regained functioning in his legs and arms. During the booking, an officer asked Plaintiff a series of questions concerning his medical needs. While allegedly answering these questions, Plaintiff indicated he had no pressing medical needs. However, Plaintiff asserts that he was unaware of what he was signing and that he was unable to physically hold the clipboard to sign the sheet. (Id. at 109.) After the booking process, Plaintiff "hobbled" to his cell and was later released. (Id. at 99.)

## II. STANDARD OF REVIEW

Summary judgment is proper if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Under the summary judgment standard, a mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000). The party seeking summary

judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247 (1986). A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

If a party does not sufficiently support its own asserted facts or address the other party's asserted fact, a court may allow "opportunity to properly support or address the fact . . . consider the fact undisputed for purposes of the motion . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . or issue any other appropriate order." Fed. R. Civ. P. 56(e).

### III.  DISCUSSION

Plaintiff brings federal claims under 42 U.S.C. § 1983 asserting that Defendants in their individual capacities violated his constitutional rights. Governmental officials performing discretionary functions are entitled to qualified immunity against civil suit in their individual capacities to ensure against subjecting those "'officials either to the costs of trial or to the burdens of broad-reaching discovery.'" Crawford-El v. Britton, 523 U.S. 574,

4

588 (1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)). The "driving force" behind the creation of qualified immunity doctrine was to ensure the resolution of insubstantial claims against government officials before discovery. Pearson v. Callahan, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009) ("Accordingly, 'we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991))).

"When a defendant asserts qualified immunity at the summary judgment stage, the burden shifts to the plaintiff, who must clear two hurdles to defeat the defendant's motion. The plaintiff must demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." Lundstrom v. Romero, 616 F.3d 1108, 1118 (10th Cir. 2010) (citation omitted). A constitutional right is clearly established when, at the time of the alleged violation, "'[t]he contours of the right [were] sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right.'" Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008) (first alteration in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

It is not necessary for a plaintiff to find a case with an identical factual situation, but he must show legal authority that makes it "apparent" that "in the light of pre-existing law" a reasonable official would have known that the conduct in question violated the constitutional right at issue. Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006). District courts have discretion in "which of the two prongs of the qualified immunity analysis

5

should be addressed first in light of the circumstances in the particular case at hand." Pearson, ___ U.S. at ___, 129 S. Ct. at 818, and the failure of either requirement is sufficient to find an official is entitled to qualified immunity.

## A. Constitutional Violation

Plaintiff claims that Defendants violated his Fourth and Fourteenth Amendment constitutional rights by using excessive force while detaining him and by ignoring needed medical treatment for his injuries. In the qualified immunity context, the facts are evaluated as alleged by the plaintiff when determining whether defendants have violated plaintiff's constitutional right. Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

### 1. Excessive Force Claim

Plaintiff asserts several factual bases for his claim that Defendants violated his Fourth Amendment right by use of excessive force: (1) the alleged beating by the officers; (2) the handcuffing; and (3) excessive threats of violence. Payton v. New York, 445 U.S. 573, 576 (1980) (finding the Fourth Amendment applicable to the states through the Fourteenth Amendment).

When evaluating Fourth Amendment excessive force claims, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted). "If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force." Fisher v. City of Las

6

Cruces, 584 F.3d 888, 893-894 (10th Cir. 2009) (quoting Cortez v. McCauley, 478 F.3d 1108, 1127 (10th Cir. 2007)). The determinative issue is whether the officers' actions are objectively unreasonable, not the officers' motives or the arrestee's subjective perception of the intrusion. Graham, 490 U.S. at 395.

Police are not required "to use the least intrusive means in the course of a detention, only reasonable ones," Marquez v. City of Albuquerque, 399 F.3d 1216, 1222 (10th Cir. 2005), and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal citation omitted). When determining the reasonableness of the officers' actions, three nonexclusive factors are considered: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by fleeing. Id.

While it is true that "proof of physical injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element" in excessive force cases, actual harm, either mental or physical, is required. Cortez, 478 F.3d at 1129 nn. 24-25; Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1195 (10th Cir. 2001) ("[T]he interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests—a person's 'sense of security' and individual dignity."). However, in handcuffing cases, "a plaintiff must establish some non-de minimis actual injury." Fisher, 584 F.3d at 898.

Here, Plaintiff was charged with and arrested for cruelty to animals—a felony under Oklahoma law—for shooting a dog.[3] 21 Okla. Stat. § 1685. Defendants approached Plaintiff knowing he possessed a weapon, which is a possible immediate threat to the safety of the officers. However, Plaintiff asserts that the excessive force came after he was restrained in handcuffs when he was beaten after falling to the ground, and Plaintiff did not resist arrest. Plaintiff also claims that Defendants used excessive threats, including threats to "splatter his brains" and "light him up" while pointing a gun against his head and torso.

Defendants deny these allegations and say any force used was reasonable under the circumstances. Defendants assert that Plaintiff's version of the facts is so contrary to the evidence on hand that it should not be given the normal summary judgement deference. Defendants argue that post-arrest pictures of Plaintiff and a booking medical questionnaire confirm that no such beating or excessive use of force occurred—but this theory is not persuasive. Defendants repeatedly state that Plaintiff's booking photo disproves his proclaimed quadriplegia caused by the alleged beating. However, the only portion of Plaintiff's body that is visible in the photo's composition is Plaintiff's face and neck. Plaintiff claims he suffered injuries over his entire body, which subsequently resulted in bruising, as well as internal injuries to his spine—all of which would not be visible from this photo. While this photo does dispel Plaintiff's characterization of his injuries as resulting in some form of quadriplegia, it does not prove that Plaintiff suffered no injuries or dispel

---

[3] Plaintiff claims he shot the dog in self defense; he was later acquitted of the animal cruelty charges against him. (Pl.'s Br., Dkt. No. 64, at 3-4.)

Plaintiff's claims as to Defendants' conduct. As to the medical questionnaire, Plaintiff claims that he has no memory of answering medical questions.

Because a factual dispute remains regarding the degree of force actually used by the officers, the Court is unable to determine at this time whether the officers' actions were objectively unreasonable. Accordingly, the record is insufficient to hold as a matter of law, at this stage, that Defendants are entitled to qualified immunity.

2. Deliberate Indifference Claim

In addition to his excessive force claim, Plaintiff asserts that Defendant Brown violated his Fourteenth Amendment rights by denying Plaintiff's request for medical care in deliberate indifference to a substantial risk of harm to Plaintiff. As a pretrial detainee, Plaintiff was entitled to the same degree of protection, under the Fourteenth Amendment Due Process Clause, as convicted inmates under the Eighth Amendment's prohibition of cruel and unusual punishment. Barrie v. Grand Cnty., Utah, 119 F.3d 862, 867 (10th Cir. 1997). To establish liability for violation of this right, a plaintiff must show that jailers exhibited deliberate indifference to the detainee's known and serious medical needs. Id. Deliberate indifference is met if the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have drawn] the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, besides describing an issue in the case as "whether [Defendants] denied [Plaintiff] medical care when he needed and requested it," Plaintiff makes no additional statement regarding or argument in favor of his deliberate indifference claim. (See Pl.'s Br.,

9

Dkt. No. 64, at 5, 11-12.) In fact, Plaintiff admits[4] that his medical questionnaire indicates that he had no emergency or other medical needs at the time of his booking, that his injuries were not visible until days after his booking, and that his handcuffs were removed from behind his back after his complaint. Plaintiff makes no allegations as to how Defendant Brown could have inferred he was injured nor does Plaintiff make any allegation that Defendant Brown did in fact draw that inference. Additionally, Plaintiff admits that he did not seek medical treatment for his alleged injuries after being released from jail.

Under the heading "Proposition 2," Plaintiff seemingly argues in his response brief that all Defendants are liable for Defendant Brown's failure to provide medical care for Plaintiff. (Id. at 11-12 (citing Reid v. Wren, Nos. 94-7122, 94-7123, 94-7124, 1995 WL 339401 (10th Cir. June 8, 1995) (unpublished) (finding officers who were present when citizen's constitutional rights were violated were liable); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (recognizing that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."))).

---

[4] In his response to Defendants' Motion for Summary Judgment, Plaintiff simply states in rebuttal to Defendants' enumerated facts: "Most of the facts alleged to be undisputed have a certain amount of truth in them, but not the whole truth, and even if true, they do not entitle Defendants to Summary Judgment." Under Local Rules, "[a]ll material facts set forth in the statement of the material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of material facts of the opposing party." LCvR56.1(c). Accordingly, Plaintiff's contention that Defendants' brief does not include "the whole truth" is insufficient to contest Defendants' factual allegations.

While officials have a duty to protect against the violation of citizens' constitutional rights, this duty does not establish a violation of Plaintiff's Eighth Amendment right against cruel and unusual punishment. Even when viewing the facts in a light favorable to Plaintiff, he has not sufficiently shown deliberate indifference on the part of any Defendant to withstand Defendants' present Motion for Summary Judgment. Therefore, Defendants are entitled to summary judgment regarding this asserted claim.

## B. Clearly Established Right

If the alleged violations were not clearly established at the time of Plaintiff's arrest, then Defendants are entitled to qualified immunity regardless of whether or not Plaintiff established that his constitutional rights were violated.[5]

The alleged Fourth Amendment violations were clearly established at the time of Plaintiff's arrest. See Cortez, 478 F.3d at 1129 (citing Lyons v. City of Xenia, 417 F.3d 565, 575-76 (6th Cir. 2005); Herzog v. Village of Winnetka, 309 F.3d 1041, 1043 (7th Cir. 2002); Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993)). Plaintiff's claim that Defendants used excessive force by displaying deadly force and threatening use of deadly force was also clearly established at the time of Plaintiff's arrest, Martin v. Bd. of Cnty. Comm'rs of Cnty. of Pueblo, 909 F.2d 402, 406-07 (10th Cir. 1990), as was the constitutional right not to be kicked, hit, or slammed with the car door while handcuffed on the ground and under officers'

---

[5] Because Defendants are entitled to summary judgment as to Plaintiff's deliberate indifference claim, whether that right was clearly established at the time of Plaintiff's arrest need not be addressed.

control—all of which are clearly violations of an arrestee's constitutional right to be free from excessive force.  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1314-15 (10th Cir. 2002); Dixon v. Richer, 922 F.2d 1456, 1462-63 (10th Cir. 1991).  Therefore, Plaintiff has satisfied the second hurdle and his excessive force claim survives the present Motion for Summary Judgment.

## IV.  CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (Dkt. No. 54) is DENIED as to Plaintiff's excessive force claim, and GRANTED as to Plaintiff's deliberate indifference claim.

IT IS SO ORDERED this 23rd day in February, 2011.

_____
ROBIN J. CAUTHRON
United States District Judge